MURDOCK, Justice
(dissenting).
I agree with the new defendants that the pronouncement in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), that the six-year limitations period of § 6-2-34(1) applies to wantonness claims, does not bind this Court in the present case. As Justice See notes in his special writing, 13 So.3d at 957, dictum is, by definition, “ ‘not essential to the judgment of the court which states the dictum’ ” (quoting Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002)). McKenzie was a case that, as this Court decided, did not even involve wantonness on the part of the defendant. This Court held that, “[biased on the facts before us, we cannot conclude that Killian consciously did some act or omitted some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result.” 887 So.2d at 871. We therefore were able to, and did, “affirm the trial court’s summary judgment in favor of Kil-lian based on the facts before us on authority of [Alfa Mutual Insurance Co. v.] Roush [, 723 So.2d 1250, 1256 (Ala.1998) ].” 887 So.2d at 871 (defining “wantonness” as above quoted from McKenzie Xemphasis added). I therefore agree with the position of the new defendants that, because McKenzie was a case in which the evidence did not present a wantonness claim, it was not essential in that case to decide the correct limitations period for a wantonness claim. Although the legal conclusion announced in McKenzie as to the statute of limitations certainly may be taken as persuasive authority, I would not consider it to have the same authoritative weight, at least not on this Court, as it would if the result in McKenzie had actually depended on the outcome of that issue. See generally, e.g., Stark v. Watson, 359 P.2d 191, 196 (Okla.1961) (“ ‘Obiter dictum is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while judicial dictum is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other, and should not be lightly disregarded.’ ” (quoting Crescent Ring Co. v. Travelers’ Indem. Co., 102 N.J.L. 85, 132 A. 106, 107 (1926))).
Even aside from the foregoing, however, I have no qualm with this Court’s taking up in the present case the issue of the proper understanding of §§ 6-2-34(1) and 6 — 2—38(¿). I agree with the main opinion that the new defendants argue in their briefs to this Court that any application of a six-year statute of limitations to wantonness claims should not be extended to toxic-substance or other products-liability cases. I can agree with the main opinion, at least for purposes of this case, that any difference between wantonness claims generally and products-liability cases does not provide a sufficiently principled basis for not applying the six-year limitations period to this case, if it is to be applied to claims of wantonness generally. I do not agree, however, that the arguments of the new defendants and the cases they cite are not sufficient to raise the issue whether the six-year statute of limitations applies to wantonness claims generally.
The brief filed by new defendant Castrol Industrial North America, Inc. (“Castrol”), begins with extensive statutory-construction arguments, including an argument that § 6-2-34(1) should be limited to inju *960 ries of the nature of assault and battery and false imprisonment specifically enumerated therein. Castrol brief at 22. In addition, before moving to a more specific discussion of toxic-tort cases, the Castrol brief contains the following general observation and citations to cases that are not toxic-tort cases:
“The Court’s own recent decisions demonstrate that claims of wantonness are subject to § 6-2-38(I). ‘[I]n at least two cases postdating McKenzie v. Killian, the Alabama Supreme Court has applied a two-year statute of limitations to wantonness claims.’ Ratcliff v. Heavy Machines, Inc., [No. 06-0861-WS-M] (S.D.Ala. July 17, 2007) [not reported in F.Supp.2d] (citing Boyce v. Cassese, 941 So.2d 932, 946 (Ala.2006); Gilmore v. M & B Realty Co., L.L.C., 895 So.2d 200, 207-08 (Ala.2004)); see also Malsch v. Bell Helicopter Textron, Inc., 916 So.2d 600, 601 (Ala.2005) (wantonness claim subject to ‘unambiguous statute of limitations’).”
Castrol brief at 35.
Similarly, before moving to a more specific argument that this Court should not apply the six-year limitations period to “products-liability” cases, the “Joint Brief of the Appellees” refers to, and cites some of, “decades” of Alabama cases, most not involving toxic-tort or other products-liability issues, which have consistently “placed wantonness claims under the two-year bar of Ala. Code § 6-2-38(1)”:
“This Court has confirmed the application of the two-year bar to claims of wantonness in three cases post-dating McKenzie: Boyce v. Cassese, 941 So.2d 932, 945-46 (Ala.2006); Malsch v. Bell Helicopter Textron Inc., 916 So.2d 600, 601 (Ala.2005); and Gilmore v. M & B Realty Co., 895 So.2d 200, 207-09 (Ala.2004). The Southern Federal District of Alabama rejected an argument similar to the Plaintiffs’ in Ratcliff v. Heavy Machines Inc., [No. 06-0861-WS-M, July 17, 2007] (S.D.Ala.) [not reported in F.Supp.2d], This was in accord with decades of Alabama law that placed wantonness claims under the two-year bar of Ala.Code § 6 — 2—38(i ).[3]
*961 Joint brief of appellees at 15-16. Later in their joint brief, the new defendants discuss these post -McKenzie cases in more detail and provide a substantial argument, not limited to toxic-tort or other products-liability cases, that “these cases still reflect this Court’s continued understanding that wantonness claims attract the two-year time bar of § 6 — 2—38(¿).” Joint brief of appellees at 33.
Similarly, before turning to the narrower question of whether products-liability cases in particular should be governed by a two-year statute of limitations, Spartan Chemical Company, Inc., argues more generally as follows:
“First and foremost, the plain language of Ala.Code §§ 6-2-34(1) and 6-2-38(Z )(1975) warrants dismissal of the Bell Carr Plaintiffs’ allegations of ‘wanton’ conduct. Section 6-2-38(Z) clearly requires that ‘[a]ll actions for any injury to the person or rights of'another, not arising from contract and not specifically enumerated in this section must be brought within two years.’ The Plaintiffs allegations do not arise out of contract and do not implicate another enumerated action within that statutory section. Thus, a plain reading of that statute requires application of the two-year limitation period to the Plaintiffs’ claims. This conclusion is supported by years of settled Alabama law.”
Spartan Chemical brief at 13. The brief then continues with discussions of IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992), to urge “a plain language” interpretation of §§ 6-2-34(1) and 6 — 2—38(Z), Ala.Code 1975, and of Winner v. Marion County Commission, 415 So.2d 1061 (Ala.1982), to argue that the examples of “assault and battery” and “false imprisonment” in § 6-2-34(1) provide meaning to the more general term, “trespass,” in the statute. Spartan Chemical brief at 13-16.
In short, the new defendants briefs (1) argue the application of principles of statutory construction to the relevant statutes and (2) cite this Court to numerous eases decided both before and after McKenzie that are not limited to toxic-tort or other products-liability claims and argue that these cases stand for the proposition that a two-year limitations period now prescribed by § 6-2-38(Z) should apply to wantonness claims. Implicitly, and of necessity, they argue that McKenzie was incorrectly decided in this regard. Moreover, in “response,” both the initial brief and the reply brief of the plaintiffs fully argue the merits of the very issues joined by the new defendants. Indeed, if anything, the plaintiffs’ briefs on appeal parse the reasoning and analytically discuss the relative merits of the McKenzie decision and the conflicting pre- and post -McKenzie decisions issued by this Court more thoroughly than do the new defendants.
In the context of these arguments, it clearly is within the authority, indeed it is the responsibility, of this Court to decide this issue and to properly declare the state of the law in Alabama on this issue. If, in the course of doing so, we determine that the two-year statute of limitations is applicable, and that McKenzie was incorrectly decided on this issue, then it falls to us to so hold. Our doing so would not require us to overrule a long line of well-established precedents; to the contrary, it would require us to overrule only a single case that stands as an exception to a long line of cases that were decided both before and after McKenzie, and upon which the new defendants expressly rely. See, e.g., Ex parte Howell Eng’g & Surveying, Inc., 981 So.2d 413, 423 (Ala.2006) (“Because we hold that the line of cases culminating in *962 Southeast Cancer[ Network, P.C. v. DCH Healthcare Authority, Inc., 869 So.2d 452 (Ala.2003),] is the better reasoned, to the extent that Dyson[ Conveyor Maintenance, Inc. v. Young & Vann Supply Co., 529 So.2d 212 (Ala.1988) ], Defco[ Inc. v. Decatur Cylinder, Inc., 595 So.2d 1329 (Ala.1992) ], and Sevier[ Insurance Agency, Inc. v. Willis Corroon Corp. of Birmingham, 711 So.2d 995 (Ala.1998),] conflict with this opinion, they are hereby overruled. We acknowledge that HES did not ground its petition for a writ of certio-rari on Rule 39(a)(1)(E), Ala. R.App. P., by seeking to have overruled the controlling precedent relied upon by the Court of Civil Appeals.”).[7]
I turn then to a consideration of the substantive issue presented. I begin by noting that I have no quarrel with the conclusion reached in McKenzie that the issue presented turns on “the degree of culpability of the alleged wrongful conduct.” McKenzie, 887 So.2d at 870 (quoting Justice Jones’s dissenting opinion in Strozier v. Marchich, 380 So.2d 804, 809 (1980)). As Strozier documents, courts as a general rule have moved from a causality-based distinction between actions labeled as trespass and trespass on the ease to a culpability-based distinction, i.e., between intentional torts and those based in negligence.
In discussing the transition from a jurisprudence that categorized causes of action based on the causal sequence of events to one that categorizes based on the culpability of the tortfeasor, one well known authority makes no mention of recklessness or wantonness, instead dividing actions merely between those involving intentional conduct and those involving negligence. See W. Page Keeton, Prosser and Keeton on the Law of Torts at 29-31 (5th ed.1984). Further, the discussion in Prosser explains that causes of action for trespass, assault and battery, and false imprisonment — in other words, causes of action of the very type addressed in § 6-2-34(1) — involve intentional conduct by the tortfeasor: “Terms such as battery, assault and false imprisonment, which were varieties of trespass, came to be associated with intent, and negligence emerged as a separate tort. ... There is still some occasional confusion, and some talk of a negligent ‘assault and battery,’ but in general these terms are restricted to cases of intent.” Id. at 30 (footnote omitted). “ ‘The intention to do harm, or an unlawful intent, is of the very essence of an assault, and without it there can be none.’ ” Id. at 30 n. 17 (quoting Raefeldt v. Koenig, 152 Wis. 459, 462, 140 N.W. 56, 57 (1912)). See also id. at 31 n. 18 (explaining that “assault and battery, false imprisonment, and trespass to land” were “derived from trespass”).[8]
*963 Our own cases likewise hold that the types of claims described in § 6-2-34(1) involve intentional harm to the plaintiff. See, e.g., Harper v. Winston County, 892 So.2d 346, 353 (Ala.2004) (explaining that the unconsented touching in an assault and battery must have been done intentionally); Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651 (Ala.1996) (false-imprisonment case). In contrast, “ ‘ “[w]antoness” has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’ ” Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat’l Ins. Corp., 589 So.2d 1289, 1292 (Ala.1991)). “To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.” Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998).[9]
*964 It is true that this Court has stated that “[w]antonness is not merely a higher degree of culpability than negligence” and that negligence and culpability “are qualitatively different tort concepts.” Lynn Strickland, Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala.1987). Accepting this proposition as true for present purposes, I would submit that if the difference between negligence and recklessness is a qualitative one rather than one of degree, then the difference between reckless conduct and intentional conduct is even more of a qualitative difference, and certainly one that is more definitive conceptually.[10]
But to show that claims alleging recklessness or wantonness are more akin in either quality or degree to claims alleging negligence than they are to claims based on a tortfeasor’s actual, specific intent to harm would be to show more than is necessary. As Justice See notes in his special writing, questioning the conclusion reached in McKenzie that claims of reckless and wanton conduct ought to be treated the same as claims for intentional torts for purposes of the statute of limitations “does not require that wanton conduct be considered more closely akin to negligence than to an intentional tort; this Court has repeatedly held that wantonness is neither an intentional tort nor some form of ‘super-negligence.’ ” 13 So.3d at 958 n. 6 (See, J., concurring in the result) (emphasis added). All that is required is to be able to conclude that reckless or wanton conduct is not intentional conduct.
I am clear to the conclusion that recklessness and wantonness are fundamentally, and definitively, different concepts than intent and that claims alleging reckless or wanton conduct are fundamentally, and definitively, different types of claims from those alleging intentional harm to the plaintiff. I therefore cannot place claims for such conduct within the governance of § 6-2-34(1), which I interpret as imposing a six-year statute of limitations on the intentional torts described therein, i.e., “trespass to person or liberty, such as false imprisonment or assault and battery.” Concomitantly, I must conclude that claims alleging reckless and wanton conduct, just like those alleging negligence and, for that matter, any number of nonin-tentional torts, fall within the governance of the general provision in § 6-2-38 (l) for a two-year limitations period for “[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section.”
As previously noted, a long line of decisions reaching back many years, including some that postdate McKenzie, has consis *965 tently affirmed the proposition that wantonness claims are governed by the relatively shorter statute of limitations now embodied in § 6 — 2—38(Z). I believe this Court should once again affirm that proposition.
I therefore respectfully dissent.

“3 Some such cases from the 16 years preceding McKenzie include: Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 125 (Ala.2003) (‘An action alleging ... wantonness ... must be brought within two years after the cause of action accrued.’); Jim Walter Homes, Inc. v. Nicholas, 843 So.2d 133, 135-36 (Ala.2002) (holding that wantonness claim was barred under § 6 — 2—38(l)); R.R. Sanders v. Peoples Bank and Trust Co., 817 So.2d 683, 686 (Ala.2001) (wantonness governed by two-year statute); Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800, 805 (Ala.1999) (‘[A]n action alleging ... wantonness must be brought within two years of [its] accrual ....’); Life Ins. Co. of Georgia v. Smith, 719 So.2d 797, 802-03 (Ala.1998) (wantonness governed by two-year statute); Booker v. United Amer. Ins. Co., 700 So.2d 1333, [1340] (Ala.1997) (‘Because the [plaintiffs] filed their complaint [in August 1993 — ] over two years after their claims accrued— their negligence and wantonness claims are time-barred.’); Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala.1993) (wantonness claim ‘governed by the two-year statute’ at § 6 — 2—38(l)); Henson v. Celtic Life Ins. Co., 621 So.2d 1268, 1274 (Ala.1993) (‘The statutory period of limitations for ... wantonness actions, found at ... § 6-2-38, is two years ....’); Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992) (‘An action alleging ... wantonness ... must be *961 brought within two years after the cause of action accrued.’).”

. I would, also note that my position does not require us to reach out to consider and overrule a case for purposes of reversing a lower court’s decision and, in so doing, to undertake a task that an appellant has not asked us to undertake. Rather, we would be responding to the arguments made by the appellees regarding the proper interpretation of § 6-2-34(1) and § 6-2-38(Z), and in the course of doing so we would affirm the judgment of the trial court. See generally General Motors Cotp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003) (“This Court may affirm a trial court's judgment on ‘any valid legal ground presented by the record ....’” (quoting Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found.., 881 So.2d 1013, 1020 (Ala.2003))). See also, e.g., Ex parte Wiginton, 743 So.2d 1071, 1072-73 (Ala.1999) (“The appellate courts will sustain the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge, Morrison v. Franklin, 655 So.2d 964 (Ala.1995), even though the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling, Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988).”).

. "At common law, trespass to the person was described as trespass v¿ et annis, ‘by *963 force and arms.’ ” Lovell v. Acrea, 500 So.2d 1082, 1083 (Ala.1986). Such "trespass to the person” is exactly what is addressed in § 6-2-34(1) and in its precursors dating back to the enactment in 1852 of § 2477, Ala.Code. Although an earlier case, decided in 1827, stated trespass will lie when the injury is “direct and immediate, whether it proceed from design or negligence,” Rhodes v. Roberts, 1 Stew. 145, 145 (Ala.1827), not long after (and according to Justice Jones in Strozier, "perhaps on account of”) the legislature’s 1852 enactment of a six-year statute of limitations for actions alleging "trespass," this Court held that it was the intentional procurement of a harm to the plaintiff that made for a "trespass," even if the harm does not result from the direct application of force by the defendant:
"[A] count which charges that Pleas [the defendant's slave] willfully burned the dwelling-house of plaintiff, and that said slave was instigated and persuaded thereto by the defendant, is, in form, a count in trespass, and charges the defendant with the commission of a felony.
"On the other hand, some of the counts, in both the original and amended complaints, charge on the defendant's intestate no actual or intentional procuration of the arson, but seek to base his liability on his negligently permitting Pleas, his slave, and of known bad character, to run at large, contrary to law. These counts, if they have any legal validity, are in case, and should not have been joined with a count in trespass.”
Bell’s Adm’r v. Troy, 35 Ala. 184, 202 (1859). Several years later, in Pruitt v. Ellington, 59 Ala. 454, 457 (1877), the Court cited Bell’s Adm’r v. Troy and similarly held:
“The distinction between an action on the case, and an action of trespass, is in effect, though not in terms preserved by the Code. For a tort committed with force and intentionally, the immediate consequence of which is injury, trespass is the appropriate remedy. If the injury proceeds from mere negligence, or is not the immediate consequence of the tort, case is the appropriate remedy.”
(Emphasis added.)
Despite the consistency of the Bell and Pruitt cases in focusing upon the intent of the actor, and thus making a good start at establishing not only internal consistency within Alabama cases, but also consistency with the transition then underway in English and American jurisprudence generally from a causality analysis to an intent-based analysis, see discussion supra of Prosser, cases decided in Alabama after Pruitt often resorted to an inconsistent and confusing mixture of references to both causality factors and intent. See discussion in McKenzie, 887 So.2d at 867-70.

. In reaching its conclusion that wantonness ought to be treated for statute-of-limitations purposes the same as intentional conduct, the McKenzie Court quoted Justice Jones's reasoning in Strozier v. Marchich that " ‘[o]ne who knowingly sets into motion, by intentionally doing (or failing to do) an act, a sequence of events resulting in reasonably foreseeable injury to another, whether the resulting injury is immediate or consequential, in my opinion, has committed a trespass within the contemplation of the six-year statute of limitations.' " McKenzie, 887 So.2d at 870 (quoting Strozier, *964 380 So.2d at 809 (Jones, J., dissenting)). The intent merely to act in a certain way, often referred to in the law as ‘'willful” conduct, and the specific intent to harm are two different things, however, and that difference denotes the line between nonintentional torts and intentional torts. As worded, the quoted statement from Strozier is a reference to the former.

. Prosser states that the terms ''willful,” “wanton,” and "reckless”
“have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. ... They apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended. Thus it is held to justify an award of punitive damages, and may justify a broader duly, and more extended liability for consequences, and it will avoid the defense of ordinary contributory negligence on the part of the plaintiff.”
Prosser at 212-14 (footnotes omitted)(emphasis added).